FILED
U.S. DIST. COURT
BRUNSWICK DIV.
2005 JUL -5 A 10 51
CLERK
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

KELVIN WILLIAMS,

 Plaintiff,

vs.         CIVIL ACTION NO.: CV504-069

CHERYL DIXON, Librarian,

 Defendant.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate currently incarcerated at Ware State Prison in Waycross, Georgia, filed a 42 U.S.C.A. § 1983 action contesting the conditions of his confinement. Defendant Dixon filed a Motion for Summary Judgment, and Plaintiff has responded. For the reasons which follow, Defendant's Motion should be **GRANTED**.

## STATEMENT OF THE CASE

On January 26, 2004, Petitioner was placed in segregation based upon allegations that he had stolen a pocket part from the prison's law library. Plaintiff contends that he was held in segregation based upon these allegations from January 26, 2004 through February 5, 2004. He asserts that it was only after he was released from segregation that he received a disciplinary hearing on the charges against him. Plaintiff avers that prior to receiving a hearing, Defendant Cheryl Dixon, the librarian at the prison ("Defendant"), refused to allow him to enter the library. Once he received a hearing, Plaintiff asserts that he accepted a plea agreement which resulted in his loss of thirty (30) days of library privileges. After the plea was accepted, Plaintiff asserts that he filed a grievance asserting that Defendant stripped him of his library access prior to his ability to receive a hearing on

the allegations against him. After the grievance was filed, Plaintiff alleges that Defendant retaliated against him for filing the grievance by giving him an additional ninety (90) days of restriction from using the law library. Finally, Plaintiff alleges that his right to access the courts has been violated because he has been restricted from using the law library.

Defendant asserts that after Plaintiff was caught stealing a pocket part from the prison library, he received Disciplinary Report Number 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 for theft and defacing. Defendant alleges that she reviewed Standard Operating Procedure ("SOP") IIA14-0001, §D, ¶15, which states that "an inmate who has been the subject of a disciplinary report for misconduct in connection with his use of the reference library or library materials may be denied access to the reference library or library materials for a reasonable period of time." (Def.'s Br., p. 2.) Defendant contends that she did not know how to handle this situation and called the Department of Corrections in Atlanta for guidance. Defendant also contends that, after speaking with someone with the Department of Corrections, her understanding was that she could restrict Plaintiff from the law library for some reasonable period of time in addition to the restriction he received based on the disciplinary report. Defendant asserts that Plaintiff received 30 days' library restriction after a disciplinary hearing, and that, based on SOP IIA14-0001, on February 12, 2004, she placed him on 90 days' law library restriction to begin on January 26, 2004, which was to run concurrently with his 30 days' regular library restriction. Defendant also asserts that Plaintiff was in lockdown off and on from January 26 to March 4, 2004. Defendant further asserts that she visited the inmates in lockdown every Tuesday and Thursday and asked them if they needed any legal materials. Defendant avers that Plaintiff never requested any legal materials from her, nor did he ever send a request through the inmate mail system.

2

Defendant contends that she allowed Plaintiff access to the law library before his 90 days' restriction expired. Defendant also contends that she placed Plaintiff on law library restriction before she even knew that Plaintiff filed grievances concerning his lack of access to the law library.

## STANDARD OF DETERMINATION

Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214, 1223 (11th Cir. 2004). An issue of fact is "material" if it might affect the outcome of the case, and an issue of fact is "genuine" when it could cause a rational trier of fact to find in favor of the nonmoving party. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259-60 (11th Cir. 2004). The court must determine "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Id. at 1260 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed.2d 202 (1986)).

The moving party bears the burden of establishing that there is no genuine issue of material fact and that she is entitled to judgment as a matter of law. Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish that there are no genuine issues of material fact. Hickson, 357 F.3d at 1260 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed.2d 265 (1986)). When the nonmoving party would

3

have the burden of proof at trial, the moving party may discharge her burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. Id. In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Acevado v. First Nat'l Bank, 357 F. 3d 1244, 1247 (11th Cir. 2004).

## DISCUSSION AND CITATION TO AUTHORITY

Defendant alleges that Plaintiff's access to courts, due process, and retaliation claims fail on the merits. Defendant also alleges that she is protected by qualified immunity, as well as Eleventh Amendment immunity. Finally, Defendant alleges that Plaintiff has not shown that he suffered any physical injury sufficient to maintain his cause of action.

I. **Plaintiff's Denial of Access to Courts Claim**

"Access to the courts is clearly a constitutional right, grounded in the First Amendment, the Article IV Privileges and Immunities Clause, the Fifth Amendment, and/or the Fourteenth Amendment." Chappell v. Rich, 340 F.3d 1279, 1282 (11th Cir. 2003) (citing Christopher v. Harbury, 536 U.S. 403, 415 n.12, 122 S. Ct. 2179, 153 L. Ed.2d 413 (2002)). In order to pass constitutional muster, the access allowed must be more than a mere formality. Bounds v. Smith, 430 U.S. 817, 822, 97 S. Ct. 1491, 1495, 52 L. Ed.2d 72 (1977); Chappell, 340 F.3d at 1282. The access must be "adequate, effective, and meaningful." Bounds, 730 U.S. at 822, 97 S. Ct. at 1495. For an inmate to state a claim that he was denied access to the courts, he must establish that he suffered "actual injury"

4

by showing that the defendant's actions hindered his ability to pursue a nonfrivolous claim. Christopher, 536 U.S. at 415, 122 S. Ct. at 2186-87; Jackson v. State Bd. of Pardons & Paroles, 331 F.3d 790, 797 (11th Cir. 2003).

Defendant avers that Plaintiff cannot show that he was denied access to the law library and materials from the law library for any significant period of time. Defendant contends that Plaintiff did not request any materials from the law library while housed in lockdown off and on between January 26 to March 4, 2004. Defendant asserts that she "made special efforts to accommodate" Plaintiff in April 2004, and that Plaintiff actually received more law library time than he was entitled to in April 2004. Defendant also asserts that Plaintiff cannot show that he suffered any prejudice or actual injury as a result of his law library restriction. Specifically, Defendant asserts that the attorney who represented him during his criminal proceedings withdrew from the appellate process due to a conflict of interest. Defendant alleges, however, that Plaintiff testified during his deposition that this attorney filed a motion for a new trial on his behalf. Defendant contends that Plaintiff alleges in his Complaint that he was "prejudiced and injured by the late filing of another civil action alleging the denial of a nutritionally adequate diet, as an injunction could have already been entertained by the Court." (Def.'s Br., p. 8, quoting Compl., ¶ 5.) Defendant, through counsel, asserts that a review of the docket sheet of this other case (CV504-53) reveals that Plaintiff filed a motion for a preliminary injunction, which this Court denied. Finally, Defendant asserts that the only civil action Plaintiff provided testimony about during his deposition was a claim against the Jackson County Sheriff's Department, and Plaintiff testified that he was not alleging that Defendant harmed his claim against the Jackson County Sheriff's Department. (Def.'s Br., p. 9.)

AO 72A
(Rev. 8/82)

Plaintiff contends that Defendant's unconstitutional denial of his access to the courts resulted in his criminal appellate counsel withdrawing from his case due to a conflict of interest. Plaintiff also contends that his motion for a preliminary injunction in another civil action filed with this Court was denied. Plaintiff further contends that Defendant "fabricated the fact" that she visited inmates on lockdown every Tuesday and Thursday even though he "was unaware at that time that he could request legal material." (Doc. No. 28, p. 6.)

There is no issue of material fact when the non-moving party has failed to prove the existence of an element essential to his case. Regions Bank v. Provident Bank, Inc., 345 F.3d 1267, 1279 (11th Cir. 2003). "Actual injury" is an essential element to a claim asserting the denial of access to the courts. See Christopher, 536 U.S. at 415, 122 S. Ct. at 2186-87. Regarding his claim that his attorney withdrew from the appellate proceedings in his criminal case, Plaintiff asserts that his attorney withdrew from his case due to a conflict of interest she had, not because of Defendant's actions. (Doc. No. 28, p. 6; order appointing a new attorney to represent Plaintiff after his former attorney disclosed a conflict of interest to the court[1].) In addition, Plaintiff testified during his deposition that his attorney actually filed a notice of appeal on his behalf. (Def.'s Ex. L, p. 10.) Plaintiff's seeming assertion that his law library restriction had an effect on his cause of action regarding his claim that he has been denied a nutritionally adequate diet is without merit. Plaintiff's assertion in this regard is that he filed a motion for a preliminary injunction in that case, and this Court denied his motion. This Court's denial of one of Plaintiff's motion based on the merits of that motion does not mean that he suffered any "actual injury" in that case.

---

[1] Given Plaintiff's failure to clearly mark his exhibits attached to Document Number 30, the Court has identified this document to the best of its ability.

6

AO 72A
(Rev. 8/82)

Finally, as to the only other cause of action mentioned in these proceedings– Plaintiff's claims against the Jackson County Sheriff's Office– Plaintiff testified during his deposition that he was "not alleging that Ms. Dixon damaged my claim against" the Jackson County Sheriff's Office. (Def.'s Ex. L, pp. 15-16.) In sum, Plaintiff has failed to present evidence establishing that there is a genuine issue of fact regarding whether he has suffered an "actual injury" due to the law library restriction Defendant imposed on him. Defendant is entitled to summary judgment on this ground.

II. **Plaintiff's Due Process Claim**

"The Due Process Clause protects against deprivations of 'life, liberty, or property without due process of law.'" Kirby v. Siegelman, 195 F.3d 1285, 1290 (11th Cir. 1999) (quoting U.S. CONST. AMEND. XIV). The Supreme Court has identified two situations in which a prisoner can be deprived of liberty such that the protection of due process is required: (1) there is a change in the prisoner's conditions of confinement so severe that it essentially exceeds the sentence imposed by the court; and (2) the State has consistently given a benefit to prisoners, usually through a statute or administrative policy, and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 1290-91 (quoting Sandin v. Conner, 515 U.S. 472, 484, 115 S. Ct. 2293, 2300, 132 L. Ed.2d 148 (1995)).

In Sandin, the United States Supreme Court addressed whether the punishment inmate Conner received for a disciplinary violation was sufficient to invoke a liberty interest protected by the Due Process Clause. 515 U.S. at 472, 115 S. Ct. at 2293. Following a disciplinary conviction, Conner received 30 days' disciplinary segregation in a Special Housing Unit. Id. at 475, 115 S. Ct. at 2296. After noting that the segregation was a form

of punishment, the Court concluded that it was not a dramatic departure from the conditions of Conner's indeterminate sentence. Id. at 485, 115 S. Ct. at 2301. The Court determined that the conditions of disciplinary segregation at the prison where Conner was incarcerated were virtually indistinguishable from the conditions of administrative segregation and protective custody. Id. at 486, 115 S. Ct. at 2301. Also, the Court noted that the conditions of disciplinary segregation were not markedly different from the conditions in general population. Id. The Court concluded that the conditions of disciplinary segregation did not impose an "atypical, significant deprivation in which a State might conceivably create a liberty interest." Id. Thus, the Court determined that Conner was not entitled to due process protection. Id. at 487, 115 S. Ct. at 2302.

Defendant asserts that the 90 days' library restriction ran concurrently with the 30 days' regular library restriction Plaintiff received from the hearing on Disciplinary Report Number 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. Defendant also asserts that she began the 90 days' law library restriction from the date of the incident, January 26, 2004, whereas Plaintiff's regular library restriction began on the date of the hearing, February 12, 2004. Defendant contends that she attempted to place Plaintiff back on library call out as early as April 6, 2004, and that Plaintiff went to the law library for the first time since the disciplinary proceeding on April 14, 2004. Defendant avers that Plaintiff's actual restriction from the law library was only 21 or 29 days past the date his regular library restriction ended. Defendant alleges that Plaintiff's additional restriction does not amount to an atypical or significant hardship under Sandin.

Plaintiff asserts that Defendant initiated disciplinary action against him before he was afforded a hearing. Plaintiff alleges that it is immaterial how many days he was

restricted from the law library because Defendant unconstitutionally and arbitrarily deprived him of his right to access the law library.

The evidence before this Court reveals, as stated above, that Plaintiff was able to request materials from the law library while he was in lockdown. Additionally, Defendant helped Plaintiff gain access to the law library approximately three (3) weeks before his restriction actually ended. Further, Plaintiff was able to spend more time in the law library than he was entitled to in April 2004. (Def.'s Ex. A, ¶¶ 6-7.) At most, Plaintiff was denied access to the law library three to four (3-4) weeks longer than he was denied access to the regular library. Plaintiff has failed to establish that his restriction from the law library presented an "atypical and significant hardship" compared "to the ordinary incidents of prison life", see Sandin, 515 U.S. at 486, 115 S. Ct. at 2301, especially in light of Plaintiff's failure to establish that he suffered any harm as a result of this restriction. Additionally, Defendant did not place Plaintiff on law library restriction until after his disciplinary hearing on February 12, 2004. (Def.'s Ex. A.) There is no evidence before this Court that Plaintiff was entitled to an additional disciplinary hearing based on the same violations of prison policy. Plaintiff has failed to establish the existence of a genuine issue of material fact as to whether Defendant violated his due process rights. Defendant is entitled to summary judgment on Plaintiff's due process claim.

### III. Plaintiff's Retaliation Claim

"To state a First Amendment claim for retaliation, a prisoner need not allege violation of a separate and distinct constitutional right." Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003) (internal citations omitted). Rather, "[t]he gist of a retaliation claim is that a prisoner is penalized for exercising the right of free speech." Id. A prisoner can

establish retaliation by demonstrating that the prison official's actions were "the result of his having filed a grievance concerning the conditions of his imprisonment." Id.

Defendant asserts that Plaintiff filed two grievances, Numbers 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 and 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, in which he asserted that he was being denied access to the law library. Defendant contends that Plaintiff filed these grievances on March 10 and 31, 2004, respectively. Defendant also contends that she placed Plaintiff on law library restriction on February 12, 2004, which was before Plaintiff filed his grievances, and that she did not place Plaintiff on any additional restriction as retaliation for him filing grievances against her.

Plaintiff alleges that it was only after he filed a grievance that he received the 90 days' law library restriction. Plaintiff avers that the evidence "does not clearly demonstrate that the Defendant did not place the Plaintiff on additional restriction for filing the grievance." (Doc. No. 28, p. 8.) Plaintiff also avers that Defendant has fabricated her statements, committed fraud, perjured her testimony, altered documents, and altered his signature.

Once a defendant moves for summary judgment, "the plaintiff may not respond simply with general attacks upon the defendant's credibility, but rather must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive." Crawford-El v. Britton, 523 U.S. 574, 600, 118 S. Ct. 1584, 1598, 140 L. Ed.2d 759 (1998). The issue of intent is a question for the trier of fact. Direct evidence of an illegal motive will usually suffice to create a genuine issue of fact and preclude summary judgment. Harris v. Ostrout, 65 F.3d 912, 917 (11th Cir. 1995) (citing Swint v. City of Wadley, Alabama, 51 F.3d 988, 1000 (11th Cir.1995)).

AO 72A
(Rev. 8/82)

According to the evidence before this Court, Plaintiff filed Grievance Number 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 on March 10, 2004, and he alleged that Defendant denied him access to the law library on February 5, 2004. (Def.'s Ex. K.) Plaintiff also filed Grievance Number 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 on March 31, 2004, and he again alleged that Defendant denied him access to the law library on February 5, 2004. (Def.'s Ex. J.) Plaintiff filed these grievances against Defendant Dixon *after* she placed him on 90 days' law library restriction on February 12, 2004. (Def.'s Ex. A, ¶ 5.) Moreover, there is no evidence other than the contentions found in Plaintiff's grievances that he was denied access to the law library on February 5, 2004. Plaintiff has not come forth with any "affirmative evidence from which a jury could find," see Crawford-El, 523 U.S. at 600, 118 S. Ct. at 1598, that Defendant Dixon had an "illegal motive" guiding her action to restrict Plaintiff's law library access. See Harris, 65 F.3d at 917. Thus, Defendant is entitled to summary judgment on Plaintiff's retaliation claim.

It is unnecessary to address the remaining grounds upon which Defendant has moved for summary judgment.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendant's Motion for Summary Judgment (Doc. No. 21) be **GRANTED**, and Plaintiff's Complaint be **DISMISSED**.

**SO REPORTED** and **RECOMMENDED**, this 5th day of July, 2005.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

11